## James R. Lynn *vs.* Frances Hooper.

### Penobscot.    Opinion May 31, 1899.

*Way.    Nuisance.    Frightening Horses.    Hay Cap.    Negligence.*

While it is true that the adjacent owner, owning presumptively to the centre of a highway may, subject to the public easement, make a reasonable use of the land, even within the location; yet a use which involves the placing of objects of such a character that will naturally frighten horses ordinarily gentle and well broken is not reasonable. Such a use is unlawful and constitutes a nuisance. The court, in such case, will not set aside a verdict for the plaintiff when the jury have not erred in finding that the defendant's hay cap, by reason of its color, shape, situation and motion, was an object naturally calculated to frighten a horse of ordinary gentleness. It is unlawful to place such a hay cap where it was, and the defendant is responsible for the natural consequences.

A motion for a new trial will not be granted when it appears from a careful examination of the whole case, that a jury would be warranted in finding that the plaintiff's horse was ordinarily gentle and well broken, that the horse was frightened by the appearance of the hay cap complained of, that thereby the injury to the plaintiff was occasioned, that the hay cap was within the located way, and by reason of its color, its fluttering, flapping movement when disturbed by the breezes, and its proximity to the traveled way was an object naturally calculated to frighten horses of ordinary gentleness, and that the defendant permitted the hay cap to remain where it was after she had had notice that it was likely to frighten horses and that horses had actually been frightened thereby.

On Motion by Defendant.

This was an action on the case, brought by the plaintiff to recover damages for injuries which he received September 19, 1896, while traveling upon the public highway, along the defendant's premises in the town of Hermon. The plaintiff's injuries were caused by his horse becoming frightened by a white cloth cap placed by the defendant over a bunch of hay which she had placed within the limits of the highway, near the traveled part, and allowed to remain there for several days. The corners of the white cloth cap were fastened with ropes to four stakes driven in the ground, having the appearance of a small white cloth tent.

The plaintiff contended that this object was about fifteen feet from the nearest wheel track. As the hay under this white cloth cap settled and the wind crept under it, it would move up and down. The plaintiff contended that it was an object which from its character, appearance and location, was naturally calculated to frighten horses of ordinary gentleness passing along and over the highway; that it had frightened a considerable number of horses that were driven or attempted to be driven past it during the time it remained there, including the plaintiff's horse, and that it thereby rendered travel along and over the highway unsafe and dangerous. The plaintiff further contended that the defendant knew of the dangerous character of this object which she had placed there, not only by being informed two days and a half before the accident by a man whose horse it had frightened and who asked her to remove it, and also later on by another person, but that a half a day at least before the accident, she saw with her own eyes a horse frightened by it, and yet, notwithstanding all this, neglected to remove it, but permitted it to remain there until noon on the nineteeth day of September, 1896, when the accident occurred.

The plaintiff introduced evidence proving that, at the time of the accident, he and his wife were driving along the highway, in the exercise of due care; that his horse was gentle and safe; his harness and wagon strong; that he was driving with both hands; and that no fault of his in any way contributed to his injury. The plaintiff's evidence also tended to show that his horse took fright at this object and jumped suddenly to the opposite side of the road, throwing him and his wife from the wagon, dislocating his shoulder and breaking his arm about three inches below the shoulder joint. The jury returned a verdict of $1000 for the plaintiff.

The defendant contended that the hay cap was not the proximate cause of the injury; and also that the defendant was not making an unreasonable, unwarrantable or unlawful use of her premises. She introduced evidence to disprove that the horse was gentle and that the hay cap was located upon her own land and not in the highway.

*F. J· Martin*, for plaintiff.

*P. H. Gillin and C. J. Hutchings*, for defendant.

.Counsel cited: *Farrell* v. *Old Town*, 69 Maine, 73; *Davis* v. *Bangor*, 42 Maine, 522; Woods, Nuisance, p. 76; 16 Am. & Eng. Ency. p. 926; *Com.* v. *Boston*, 97 Mass. 555; *Everett* v. *Marquette*, 53 Mich. 450; *People* v. *Rochester*, 44 Hun, 166; *Jenks* v. *Williams*, 117 ˙Mass. 217; *Hexamer* v. *Webb*, 101 N. Y. 377; *Staples* v. *Dickson*, 88 Maine, 366; 1 Pollock, Torts, p. 324; ·*King* v. *Morris & Essex R. R. Co.* 18 N. J. Eq. 397; *Corthell* v. *Holmes*, 87 Maine, 24; *Soltau* v. *DeHeld*, 2 Sim. N. S. 133.

SITTING: PETERS, C. J., EMERY, HASKELL, WISWELL, STROUT, SAVAGE, JJ.

SAVAGE, J. Action for personal injuries occasioned by ,an alleged nuisance. The plaintiff claims that while traveling upon the highway adjacent to the defendant's land, his horse became frightened by a hay cap placed by the defendant over a bunch of her hay standing upon or near the highway, and that the horse bolted against a fence on the opposite side of the road, whereby the plaintiff was thrown out of his wagon and sustained the injuries complained of. The verdict was for the plaintiff. The defendant asks us to set the verdict aside as being contrary to the law and the evidence. Several issues of fact were sharply contested before the jury; among them, the character of the horse for gentleness, the location of the hay cap, its distance from ˙the traveled way, and whether the horse's fright was occasioned by the hay cap or otherwise.

If the action is maintainable upon proof of such facts as a jury would be warranted in finding from the evidence in the case, the verdict must be sustained. A discussion of the evidence in detail is unneccessary. From a careful examination of the whole case, we think a jury would be warranted, in finding the following facts: That the plaintiff's horse was ordinarily gentle and well broken; that the horse was frightened by the appearance of the hay cap; that thereby the injury was occasioned; that the hay cap, because

of its color, its fluttering, flapping movement when disturbed by the breezes, and its proximity to the traveled way, was an object naturally calculated to frighten horses of ordinary gentleness; that the defendant permitted the hay cap to remain where it was after she had had notice that it was likely to frighten horses, and that horses had actually been frightened thereby.

The evidence tends to show that the cap covering the bunch of hay was a square piece of white cloth, and that its four corners were attached to ropes, which in turn were tied to four stakes driven in the ground in the form of a square. The evidence also tended to show that the cloth cap would move up and down by the action of the breezes, like the fluttering of a tent. The plaintiff testified that the hay cap was in motion at the time his horse became frightened. The bunch of hay was situated on land about three feet lower than the traveled way. Its distance from the nearest wheel track is in dispute. The defendant contends that it was twenty-eight feet. The plaintiff is equally certain that it was only from fifteen to seventeen feet. There was no fence between the traveled way and the hay cap. We think the weight of evidence supports the contention of the plaintiff as to distance, or at least that a jury would have been warranted in so finding. Eight witnesses, several of them apparently disinterested, testified for the plaintiff on this point, and the farthest distance testified to by any of them is seventeen and one-half feet. There is also a controversy whether the hay cap was within the limits of the location of the highway. The defendant contends that it was without the location, upon her own land, and that therefore she had a lawful right to place it and keep it there without liability; that it was a reasonable use of her own property. But the plaintiff contends that the hay cap was within the located way. As we have already suggested, the balance of the weight of the evidence tends to support the contention of the plaintiff that the hay cap was not farther than seventeen and one-half feet from the nearest wheel track, and an examination of the surveyor's plan, introduced and used by the defendant at the trial, shows that the side line of the located way, at the point where the hay cap was, was more than

seventeen and one-half feet from the nearest wheel track. Therefore, we must assume that the hay cap was within the way. Under these conditions, then, the next question which arises is whether the hay cap was so near the traveled part of the highway, and was of such a character as naturally to frighten horses of ordinary gentleness lawfully driven thereon. Was it, as the plaintiff claims, a nuisance?

It is true that the owner of land adjacent to a way and owning presumptively to the centre of the way may, subject to the public easement, make a reasonable use of the land, even within the location. *Farnsworth* v. *Rockland,* 83 Maine, 508. But we think that a use which involves the placing of objects of such a character as naturally to frighten horses, ordinarily gentle and well broken, is not reasonable. Such a use is unlawful, and constitutes a nuisance. The land owner may not make erections or excavations within the located way, of such a character as to imperil public travel, by frightening horses lawfully driven along the way.

Whether in fact the hay cap was an object naturally calculated to frighten horses of ordinary gentleness is stoutly controverted. To show that it was such an object, the plaintiff relies not only upon the appearance and proximity of the hay cap, but also upon the fact that other horses, claimed to be ordinarily gentle, had been frightened by this very cap. *Crocker* v. *McGregor,* 76 Maine, 282; *House* v. *Metcalf,* supra; *Brown* v. *Eastern and Midlands Ry. Co.,* 22 Q. B. Div. 391. The hay was bunched and the cap placed over it Wednesday; the plaintiff was injured the following Saturday. There is testimony that between these dates no less than seven or eight other horses became frightened by this same cap.

Was this cap of such a character and so placed as to constitute a nuisance? "A nuisance," said this court in *Norcross* v. *Thoms,* 51 Maine, 503, "consists in a use of one's own property in such a manner as to cause injury to the property, or other right, or interest of another. It is the injury, annoyance, inconvenience or discomfort thus occasioned, that the law regards, and not the particular business, trade or occupation from which these result. A

lawful as well as an unlawful business may be carried on so as to prove a nuisance. The law in this respect looks with an impartial eye upon all useful trades, avocations and professions. However ancient, useful or necessary the business may be, if it is so managed as to occasion serious annoyance, injury or inconvenience, the injured party has a remedy." *Davis* v. *Winslow*, 51 Maine, 264. These are general principles. In this case, if the hay cap was a nuisance, it was so because it endangered the public use of the way. *Staples* v. *Dickson*, 88 Maine, 362. A thing may be a nuisance because it interferes with or endangers public travel, although it does not of itself constitute an obstruction in the highway. An object at the side of a highway of such a character that it is naturally calculated to frighten horses of ordinary gentleness may constitute a nuisance. Elliott on Roads, 482; Cooley on Torts, 617.

It is impossible to state a general rule by which it can be determined whether any particular object constitutes a nuisance or not. The question must depend upon the conditions and circumstances in each case. Conditions vary. No two cases are alike. Hence it is rare that one case can be a binding precedent for another.

Its distance from the traveled path, its relation to fences and other objects, its height or depth from the road, its color, whether it is customarily found in similar places and under similar conditions, whether it is so situated that horses being driven come suddenly in sight of it, whether it is in repose, or whether it is fluttering like a living thing,—these and many other considerations must be taken account of in determining whether the object is a nuisance or is dangerous to public travel. This suggestion is fully borne out by an examination of cases concerning objects causing fright, some of which we cite: A pile of shingles, *Merrill* v. *Hampden*, 26 Maine, 234; *Lawrence* v. *Mt. Vernon*, 35 Maine, 100; evergreen tree standing in cart, *Davis* v. *Bangor*, 42 Maine, 522; a rock, *Card* v. *Ellsworth*, 65 Maine, 547; a cow, *Perkins* v. *Fayette*, 68 Maine, 152; a hole, *Spaulding* v. *Winslow*, 74 Maine, 528; a pile of stones, *Clinton* v. *Howard*, 42 Conn. 294;

a pile of plastering, *Dimock* v. *Suffield*, 30 Conn. 129; a tent, *Ayer* v. *Norwich*, 39 Conn. 376; a watering-trough painted red, *Cushing* v. *Bedford*, 125 Mass. 526; bales of hay charred by fire, *Morse* v. *Richmond*, 41 Vt. 435; a hollow log blackened by fire, *Forshay* v. *Glen Haven*, 25 Wis. 288; sled with tubs on it, *Judd* v. *Fargo*, 107 Mass. 264; rubbish, *Burgess* v. *Gray*, 1 Man. Gr. & Scott, 578. See also cases in note in Elliott on Roads, 449. Most of these objects were held to be nuisances, or imperiling travel.

In the present case, the court is of opinion that a jury might properly find that the defendant's hay cap was situated within the highway, and that by reason of its color, shape, situation and motion, it was naturally calculated to frighten a horse of ordinary gentleness. If so, it was unlawfully there, and the defendant is to be held responsible for the natural consequences. There are no legal impediments to the maintenance of the action. The facts have been passed upon by the jury, and we perceive no sufficient reason for disturbing their finding.

*Motion overruled.*