# SUPPLEMENT

OPINION OF THE JUSTICES TO THE SENATE AND THE
HOUSE OF REPRESENTATIVES.

*Constitutional Law*, Police power, Regulation of traffic. *Way*, Public:
regulation of use by ordinance or by-law, parking meter. *Municipal
Corporations*, By-laws and ordinances. *Parking Meter. Supreme
Judicial Court*, Opinion of the Justices.

The Justices under c. 3, art. 2, of the Constitution expressed their opinion
that as a general principle the General Court has power to regulate
parking upon public ways so far as incidental to the public easement
of travel, and may do so by a fee system intended to hasten the de-
parture of parked vehicles and to help defray the cost of installation
and supervision; but they gave no opinion as to whether an act au-
thorizing municipalities in general terms by ordinances and by-laws
to adopt and enforce a system of parking meters for that purpose would
be constitutional, further particulars as to such ordinances and by-
laws and the circumstances in which they would be put into operation
not being shown.

The Justices refrained from giving any opinion in answer to a general
question, submitted to them under c. 3, art. 2, of the Constitution, in
an order adopted by the General Court, "Would . . . [a certain]
bill, if enacted into law, be unconstitutional in any respect?"

On March 22, 1937, the following order was adopted by
the Senate and on March 23, 1937, was adopted in concur-
rence by the House of Representatives:

WHEREAS, There is pending before the General Court a
bill printed as House number seven hundred and forty-
five, entitled "An Act authorizing the Purchase, Installa-
tion, Operation and Maintenance of Devices known as
Parking Meters by Cities and Towns for the purpose of
enforcing Ordinances, By-Laws, Orders, Rules and Regu-
lations relative to the Parking of Vehicles on Public
Ways, and the Establishing of and Charging a Fee for the
Privilege of Parking Vehicles on Certain Public Ways,"
a copy whereof is herewith submitted; and

WHEREAS, Grave doubt exists as to the constitutionality of said bill if enacted into law; therefore be it

ORDERED, That the opinions of the Honorable the Justices of the Supreme Judicial Court be required by the General Court upon the following important questions of law: —

1. Would the establishment of parking meters for the purpose of collecting fees for the privilege of parking vehicles upon the public highways, substantially as provided in the accompanying bill, infringe any rights of the servient land owners abutting on the public highways or any rights of the individual members of the public in the use of the public highways, under the State or Federal Constitution, or both?

2. Would the accompanying bill, if enacted into law, be unconstitutional in any respect?

The proposed statute to which the order and the Opinion relate is as follows:

SECTION 1. Section four of chapter forty of the General Laws, as appearing in the Tercentenary Edition thereof, is hereby amended by striking out the fourth paragraph thereof and inserting in place thereof the following: —

For the installation, operation and maintenance, subject to such laws as may be applicable, of mechanical traffic signal light systems, signs, signals, markings, parking meters or other devices and systems for the control and regulation of traffic on ways within its control, including poles, wires, and other necessary apparatus, upon, over or under such ways. Such a contract may provide for payments by such cities and towns over a period not exceeding five years, and any obligations of such cities and towns created by such a contract shall not be deemed a liability within the meaning of section thirty-one of chapter forty-four.

SECTION 2. Said chapter forty is hereby further amended by inserting after section twenty-two the following new section: —

*Section 22A.*  Any city or town may, for the purpose of enforcing its ordinances, by-laws, orders, rules and regulations relating to the parking of vehicles subject so far as applicable, to section two of chapter eighty-five of the General Laws, install, operate and maintain mechanical devices known as parking meters; may make ordinances, by-laws, rules and orders respecting the same and may establish and charge a fee by the deposit of coins in such meters for the privilege of parking vehicles under such ordinances, by-laws, orders and rules on ways subject to such rules and regulations within its control, the fees so paid to be independent of the license fee specified in the preceding paragraph.

SECTION 3.  Section seven of chapter forty-four is hereby amended by striking out the last paragraph thereof and inserting in place thereof the following: —

Except as to debts incurred under clause nine, debts may be authorized under this section only by a two thirds vote.

The order was transmitted to the Justices on March 27, 1937, and on April 15, 1937, they returned the following answers:

To The Honorable the Senate and the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions in an order received on March 27, 1937, a copy whereof is hereto annexed.

The purpose of the proposed statute described in the order is to facilitate by means of parking meters the enforcement of municipal ordinances, by-laws, orders, rules and regulations concerning the parking of vehicles on public ways, and the charging of a fee for such parking.  The validity of the proposed statute depends in large part upon the rights of the public in public ways.  Therefore it is necessary to determine what those rights are.  Highways and other public ways commonly have been laid out and established by the Commonwealth, counties, towns, cities or districts.  The

public acquire by the location of such ways a right of passage for the purpose of travel over the land taken with all the powers and privileges necessarily implied as incidental to the exercise of that right. The easement of travel is coextensive with the limits of the highway, and includes every reasonable means of passage and transportation for persons and commodities and of transmission of intelligence. *Commonwealth* v. *Morrison*, 197 Mass. 199, 203. It has always been held with respect to land included within the limits of the public way "to be clear that the public have no other right, but that of passing and repassing; and that the title to the land, and all the profits to be derived from it, consistently with, and subject to, the right of way, remain in the owner of the soil." *Stackpole* v. *Healy*, 16 Mass. 33, 34. *New England Telephone & Telegraph Co.* v. *Boston Terminal Co.* 182 Mass. 397. *Sears* v. *Crocker*, 184 Mass. 586. *Opinion of the Justices*, 208 Mass. 603. *General Outdoor Advertising Co. Inc.* v. *Department of Public Works*, 289 Mass. 149, 190. The fee of the land may be taken by public authority or it may be in someone other than the abutter. *Boston* v. *Richardson*, 13 Allen, 146, 159. That however is unusual. Abutting owners ordinarily hold the title to the fee to the center of the public way, subject only to the easement of travellers to pass and repass. This easement of travel has been interpreted in a broad sense. It comprises the installation of water and gas pipes, sewers, telephone, telegraph, electric light and power poles, wires and conduits, fire alarm and police boxes, hitching posts, traffic lights, signs and similar devices, as well as the obvious methods of transportation and passage included in the general term. All these are permitted because they facilitate the use of public ways for purposes of transportation or passage and promote the safety or comfort of those who travel. Whatever is done within the limits of the highway by the public or by members of it not justifiable as incidental to travel is a violation of the rights of the abutting owner. *Commonwealth* v. *Morrison*, 197 Mass. 199. *Moran* v. *Gallagher*, 199 Mass. 486. *Commonwealth* v. *Surridge*, 265 Mass. 425.

The parking meter has not yet become familiar. We are

informed that it consists of a post designed to be set near or inside the curb surmounted by an enclosed mechanism for receiving coin, measuring time and displaying a conspicuous signal at the expiration of some definite period of minutes, the whole being between four and five feet in height. Its main purpose is to aid the police in enforcing regulations governing the parking of automobiles. That end is accomplished by rendering it easy to observe the adjacent automobile which has exceeded the permissible period of parking. The proposed statute contains no definition or description of parking meters. Anything which the development of manufacture may produce under that name would be permissible under the terms of proposed statute if enacted into law. In point of size and position the parking meter as we understand it would not be in excess of the limits of structures permissible under the easement of public travel acquired by the laying out of a public way and already described. *Centebar* v. *Selectmen of Watertown*, 268 Mass. 121.

The parking of automobiles has become a considerable problem in the regulation of traffic on highways. Ordinances and by-laws undertaking to govern parking have been widely adopted. Even before the common use of automobiles, ordinances limiting the time during which a vehicle could stop on the public way were adopted and enforced. *Commonwealth* v. *Fenton*, 139 Mass. 195. *Commonwealth* v. *Rowe*, 141 Mass. 79. See *Commonwealth* v. *Fox*, 218 Mass. 498. In general travel by the public upon highways may be regulated by the General Court. It represents the public and the rights of individuals as travellers are subject to its reasonable control. With respect to the parking of automobiles it has been held that "No right of any citizen is impaired by an ordinance which prohibits the parking of vehicles at a place in a public street or highway where such person has no legal title to the land occupied by the street or highway and has no interest in such greater than an easement of travel which is held in common with all citizens." *Commonwealth* v. *Rice*, 261 Mass. 340, 345. *Commonwealth* v. *Newhall*, 205 Mass. 344. *Commonwealth* v. *Ober*, 286 Mass. 25. Doubtless temporary and

reasonable stops of automobiles on highways are lawful as an incident to travel. Whatever cannot be justified as incidental to travel is a violation of the rights of the abutting landowner in the ordinary case where he owns the fee of the public way, and is also an obstruction to the right of travel by the public. There is much parking along highways which is in excess of the easement of travel and is a trespass against the abutting landowner. It commonly escapes being challenged in court, perhaps because of its fugitive nature or the difficulty of identification of the particular offender or for other reasons. It is hard to draw the line between temporary stops of automobiles which are incidental to travel and therefore lawful, and the occupation of a part of the public way which is not incidental to travel and cannot be permitted even by legislative act against the protest of the owner of the fee. *Commonwealth* v. *Morrison*, 197 Mass. 199. An ordinance which allowed such parking as would interfere with reasonable access to his premises from the public way by the abutter would be invalid. Even where the abutter does not own the fee of the public way he is entitled to reasonable access to the way from his land and to his land from the way. *Anzalone* v. *Metropolitan District Commission*, 257 Mass. 32. *Dwyer* v. *Metropolitan District Commission*, 269 Mass. 573, 578. *Gleason* v. *Metropolitan District Commission*, 270 Mass. 377, 381. An ordinance which constitutes an unreasonable regulation of traffic or an unwarrantable interference with the right of access of the abutter would be invalid. Regulations cannot be authorized which purport to confer upon individuals rights of occupancy of the highway which in time, space or otherwise exceed the fair limits of the exercise of the public easement of travel. The rights of an abutter with respect to the fee in the highway have received recent recognition in *Burrell* v. *Checker Taxi Co.* 287 Mass. 108. See St. 1930, c. 392, §§ 5, 6. In instances where the municipality or other public authority owns the fee in the street, the abutter could make no claim for trespass upon his property. His rights would be con-

fined to reasonable right of passage between his land and the way.

A municipality cannot be authorized to turn this plan of using parking meters into a business for profit over and above the expenses involved in proper regulation of the public use. It cannot establish a commercial enterprise on the public easement. To do that would be to divert to alien purposes property taken for public uses and paid for by funds raised by taxation. This principle has been discussed in *Salisbury Land & Improvement Co.* v. *Commonwealth*, 215 Mass. 371, 377, *D. N. Kelley & Son, Inc.* v. *Selectmen of Fairhaven*, 294 Mass. 570, and *Cape Cod Steamship Co.* v. *Selectmen of Provincetown*, 295 Mass. 65.

Requirement of payments from those parking automobiles to meet the cost of the installation, operation and maintenance of the system and its general supervision would be permissible. It is not necessarily an infringement of the rights of individuals in public ways to charge a small fee for some legitimate special use to defray the cost of the special service afforded. That would be nothing more than the exaction of a toll which was familiar in the early days of highways. Toll bridges and tunnels are not uncommon. See *Boston* v. *Treasurer & Receiver General*, 237 Mass. 403, 414. This point is covered in principle by *Postal Telegraph Cable Co.* v. *Chicopee*, 207 Mass. 341, 347. Analogies may be found in the tolls often demanded for the use of public ways and bridges, wharfage fees charged at public wharfs and landing places, fares collected upon municipally owned railways and ferries, and charges for other publicly owned and operated utilities. It was said in *Brush* v. *Commissioner of Internal Revenue*, 300 U. S. 352, "A state, for example, constructs and operates a highway. It may, if it choose, exact compensation for its use from those who travel over it (see *Bingaman* v. *Golden Eagle Lines*, 297 U. S. 626, 628); but this does not destroy the claim that the maintenance of the highway is a public and governmental function." The proposed statute makes fundamental changes in the laws dealing with municipal finance and modifies G. L.

(Ter. Ed.) c. 44, § 7, Par. 9; § 31. But these provisions do not affect the answer to question 1. There is ground for argument that the proposed statute in § 1 authorizes a municipality to farm out to strangers the running of the system, but we are inclined to think that that would not be its proper construction. Therefore this matter does not affect the answer to question 1.

There are numerous decisions in other jurisdictions touching the subject of parking regulations. It seems unnecessary to review them. A few of them may be cited. They manifest a considerable diversity of view. *Chicago* v. *McKinley,* 344 Ill. 297. *Birmingham* v. *Hood-McPherson Realty Co.* 172 So. Rep. (Ala.) 114 [233 Ala. 352]. *State* v. *McCarthy,* 126 Fla. 433. *Ex parte Duncan,* 179 Okla. 355. *Decker* v. *Goddard,* 233 App. Div. (N. Y.) 139. *Waldorf-Astoria Hotel Co.* v. *New York,* 212 N. Y. 97. *McFall* v. *St. Louis,* 232 Mo. 716, 730. See cases collected in 72 A. L. R. 229, 87 A. L. R. 546.

The conclusion is that within the limits of public travel, the General Court may regulate parking and may do so by a fee system intended to hasten the departure of parked vehicles and to help defray the cost of installation and of supervision. It is conceivable that under the proposed statute ordinances and by-laws may be drawn which would not by their enforcement violate constitutional rights. It is also conceivable that ordinances and by-laws may be drawn which would violate constitutional rights and underlying conceptions of public travel on public ways. Whether the use of parking meters under the act would be confined within the lawful limits of travel cannot be known until ordinances and by-laws are drawn and applied to particular situations on the highways. No categorical answer can be given to question 1. All will depend upon what ordinances, by-laws and regulations are made and the circumstances under which they are put into operation and enforced. We cannot go further than state the general principles already outlined.

The second question is general and presents no specific point. It has always been the practice for the Justices to

confine their answers to particular questions of law submitted to them and not to discuss a broad inquiry as to the constitutionality of a proposed statute in its entirety. *Opinion of the Justices,* 145 Mass. 587, 592; 239 Mass. 606, 612; 261 Mass. 556, 613.

> ARTHUR P. RUGG.
> JOHN C. CROSBY.
> EDWARD P. PIERCE.
> FRED T. FIELD.
> CHARLES H. DONAHUE.
> HENRY T. LUMMUS.
> STANLEY E. QUA.